## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| **PATRICK HIGGINS, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**GORDON FOOD SERVICE STORE LLC,**<br><br>**Defendant.** | **Case No. 20-1054**<br>**Hon. Hala Y. Jarbou** |

## <u>JOINT MOTION TO APPROVE SETTLEMENT</u>

The parties submit this Joint Motion to Approve Settlement.  The Parties support this Motion with their Memorandum of Law and Plaintiffs' further support this Motion with the Declarations of their counsel, filed simultaneously herewith.

WHEREFORE, for the reasons set forth in the parties' Memorandum of Law and the Declarations submitted by Plaintiffs' Counsel, the Parties  respectfully request that the Court: (1) approve as fair, adequate and reasonable the settlement set forth in the Settlement Agreement and Release ("Settlement Agreement"); (2) for purposes of settlement only, certify an FLSA Section 216(b) opt-in class of all current and former ASMs who (i) worked for Defendant in any Gordon Food Service retail store in the United States except for higher-volume stores MP 130 (Key West, FL), MP 001 (Wyoming, MI), and MP 135 (Ft. Myers, FL), which operate under a different management model, (ii) between October 3, 2017 and March 28, 2021; and (iii) during a time period when their assigned store had two ASMs assigned to that store; (3) approve the proposed Notice of Settlement and Consent to Join, Claim, and Release Form ("Notice Packet") attached to the Parties' Memorandum of Law as Exhibit A, and direct its distribution; (4) approve service awards to Plaintiffs Patrick Higgins, Ivan Robinson, Brooke Yahle, Joseph Schneider, William

1

Kefauver, Paul Reckley, and Karen Buttery; (5) approve Plaintiffs' request for one-third of the settlement fund for attorneys' fees and reimbursement of Plaintiffs' counsel's out-of-pocket litigation costs; and (6) dismiss this action with prejudice and without further costs or fees to any party.

Respectfully submitted,

By:/*s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER, BONANNI &RIVERS, P.C.**
117 West 4th Street Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mbonanni@pittlawpc.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz
Tamra Givens
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

**SHAVITZ LAW GROUP, P.A.**
Michael Palitz
800 3rd Avenue, Suite 2800
New York, NY 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

*Attorneys for Plaintiffs and the Putative Collective*

Dated: September 15, 2021

*By: /s/ Margaret Carroll Alli w/consent*
Margaret Carroll Alli (P38281)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, Michigan 48009
t: (248) 593-6400
f: (248) 283-2925
meg.alli@ogletree.com

Lauren H. Zeldin (GA Bar # 368999)
Jeffrey J. Costolnick (GA Bar # 637168)
Ogletree Deakins Nash Smoak & Stewart, P.C.
191 Peachtree Street NE, Suite 4800
Atlanta, GA 30303
(404) 881-1300
lauren.zeldin@ogletree.com
jeff.costolnick@ogletree.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **PATRICK HIGGINS, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **Case No. 20-1054** |
| **v.** | **Hon. Hala Y. Jarbou** |
| **GORDON FOOD SERVICE STORE LLC,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION TO APPROVE SETTLEMENT**

Following an extensive investigation, formal discovery, an exchange of payroll data and information, and arm's-length negotiations with one of the nation's top-rated employment class action mediators, Plaintiff Patrick Higgins and Defendant Gordon Food Service Store LLC ("Gordon Food" or "Defendant") have agreed, subject to Court approval, to settle this wage and hour lawsuit on a collective basis pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").  The settlement satisfies the criteria for FLSA approval because it was reached after significant discovery and contested litigation and was the result of arm's-length settlement negotiations conducted by experienced counsel and an independent mediator.  The significant material terms of the settlement are discussed herein.  Additionally, pursuant to Defendant's proposed confidentiality provision, which Plaintiffs do not oppose, Defendant has provided a copy of the Settlement Agreement to the Court to review *in camera*.[1]  Accordingly, the Parties

---

[1] Unless otherwise ordered by the Court, the Settlement Agreement will be submitted directly to chambers via secured electronic communication – clearly marked "For In Camera Review Only." As discussed at Section II.D of the Argument, Defendant will then await the Court's instruction regarding whether the Court will request that the Settlement Agreement be filed under seal or on the public docket with the specific monetary terms redacted. Putative Collective

3

respectfully request that the Court: (1) approve as fair, adequate and reasonable the Settlement

Agreement and Release ("Settlement Agreement"); (2) for purposes of settlement only, certify an

FLSA Section 216(b) opt-in class of all current and former Assistant Store Managers ("ASMs")

who (i) worked for Defendant in any Gordon Food Service retail store in the United States

except for higher-volume stores MP 130 (Key West, FL), MP 001 (Wyoming, MI), and MP 135

(Ft. Myers, FL), which operate under a different management model, (ii) between October 3,

2017 and March 28, 2021; and (iii) during a time period when their assigned store had two

ASMs assigned to that store; (3) approve the proposed Notice of Settlement and Consent to Join,

Claim, and Release Form ("Notice Packet") attached as Exhibit A to the Shavitz Declaration and

direct its distribution; (4) approve service awards to Plaintiffs Patrick Higgins, Ivan Robinson,

Brooke Yahle, Joseph Schneider, William Kefauver, Paul Reckley, and Karen Buttery; (5)

approve Plaintiffs' request for one-third of the settlement fund for attorneys' fees and

reimbursement of Plaintiffs' counsel's out-of-pocket litigation costs of $13,005.42; and (6)

dismiss this action with prejudice and without further costs or fees to any party.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Allegations

Plaintiff Higgins filed this action on November 3, 2020, and Plaintiffs Robinson, Yahle,

Schneider, Kefauver, Reckley, and Buttery, subsequently opted-in to this action.  Higgins,

Robinson, Yahle, Schneider, Kefauver, Reckley, and Buttery are collectively referred to as

"Named Plaintiffs."  Named Plaintiffs are former ASMs of Defendant.  Named Plaintiffs alleged

---

Members will receive information regarding the settlement and their individual settlement
amount in the Notice Packet, and the Notice also informs them that they can obtain further
information regarding the Settlement Agreement by contacting the Settlement Administrator,
whose contact information is provided in the Notice (See Exhibit A).

that Defendant violated the FLSA by improperly classifying them as exempt from the FLSA's overtime pay requirements.  ECF No. 1 at ¶ 26-34.

## II.     **Overview of Investigation**

Before filing the Complaint, in April 2020, Plaintiffs conducted a thorough and multi-state investigation into the merits of the potential claims that ASMs were not paid overtime wages.  Declaration of Gregg I. Shavitz, Esq. in Support of Joint Motion to Approve Settlement ("Shavitz Decl.") at ¶ 15.[2]  Plaintiffs focused their investigation and legal research on the underlying merits of the unpaid wage claims, the damages, and the propriety of FLSA collective action certification.  *Id.* ¶ 15.  Plaintiffs' Counsel also had in-depth interviews of the Named Plaintiffs about their job duties, hours worked, Defendant's policies and procedures, and store operations.  *Id.* ¶ 15.

Plaintiffs' Counsel researched the potential defenses that Gordon Food would raise including the FLSA's executive and administrative exemptions.  *Id.* ¶ 16.  Plaintiffs' Counsel also researched the law on FLSA collective action certification in misclassification cases and other employment litigation involving Gordon Food.  *Id.* ¶ 17.

Following the investigation, on June 22, 2020, Plaintiffs' Counsel drafted correspondence to Gordon Food outlining Plaintiffs' claims and inviting Gordon Food's pre-litigation response to the allegations.  *Id.* ¶ 18.  Before filing the Complaint, the parties' counsel had many conversations about the claims and defenses.  *Id.* ¶ 18.  The parties entered into a tolling agreement for Plaintiffs and other ASMs while these pre-suit settlement discussions occurred. *Id.* ¶ 18.  Despite significant efforts, the parties did not settle the claims pre-suit and this litigation was commenced.  *Id.* ¶ 18.

---

[2]     All exhibits are attached to the Shavitz Declaration.

### III.    <u>Litigation History and Settlement Negotiations</u>

On November 3, 2020, Plaintiffs filed the Complaint, alleging that Gordon Food violated the FLSA by misclassifying them and other ASMs as exempt from federal overtime pay requirements.  *See* ECF No. 1.  The Complaint also included a putative Rule 23 class claim for alleged violations of Ohio wage and hour law.  Defendant filed an Answer on December 3, 2020, denying all claims.  *See* ECF No. 6.

The parties conferred and prepared a case management plan for discovery.  ECF No. 12. Magistrate Judge Kent held an initial case management conference on January 13, 2021.  ECF No. 13.  Thereafter, the parties began formal discovery.

Plaintiffs served their initial disclosures and written discovery requests.  Shavitz Decl. ¶ 21.  The parties negotiated a protective order for the exchange of confidential and protected information and documents.  ECF No. 15.  Plaintiffs' discovery requests sought electronically stored information ("ESI") and the parties' counsel had multiple conferrals regarding the ESI sources, ways to search such sources in a cost-effective and productive way, and production of ESI.  Shavitz Decl. ¶ 21.  The parties ultimately reached an ESI agreement and Defendant produced a substantial amount of electronic mail and other electronic documents.  Shavitz Decl. ¶ 21.

Plaintiffs' Counsel reviewed Defendant's production totaling approximately 51,000 pages.  Shavitz Decl. ¶ 22.  This production contained important information concerning the job duties performed by Plaintiffs and ASMs, electronic mail which showed how Gordon Food stores operated and the types of tasks that Plaintiffs and other ASMs performed, schedules and information showing the number of hours worked, job descriptions and corporate documents

showing the expectations for the ASM position, and policies and procedures addressing store operations and ASM training.  Shavitz Decl. ¶ 22.

Plaintiffs responded to Defendant's requests for production of documents and interrogatories served on the Plaintiffs.  Shavitz Decl. ¶ 23.  Defendant served about 90 requests for production of documents and approximately 80 interrogatories.  Shavitz Decl. ¶ 23. Plaintiffs' Counsel worked with the Plaintiffs to obtain all documents, electronically stored information, and information to respond to Defendant's requests for production and interrogatories.  Shavitz Decl. ¶ 23.

The parties litigated multiple discovery disputes addressing issues like production of contact information from FLSA collective action members and information Defendant sought from Plaintiffs' current employers.  Shavitz Decl. ¶ 24.  The parties had a hearing with the Magistrate on these issues and thereafter reached a compromise after much negotiation among counsel.  Shavitz Decl. ¶ 24.

The parties were also preparing for scheduled depositions of the Named Plaintiffs and Defendant's Rule 30(b)(6) representative.  Shavitz Decl. ¶ 25.  Plaintiffs' Counsel was also working on their motion for conditional certification including researching the legal issues and identifying all of the evidence to support the motion.  Shavitz Decl. ¶ 25.

While the parties were aggressively litigating the claims, Plaintiffs' Counsel contacted Defendant's counsel about the possibility of mediation.  Shavitz Decl. ¶ 26.  Defendant agreed and the parties selected Hunter Hughes, Esq. as the mediator.  Shavitz Decl. ¶ 26.

Prior to mediation, Plaintiffs requested payroll data to calculate Defendant's potential exposure.  Shavitz Decl. ¶ 27.  Defendant provided the information and Plaintiffs' Counsel prepared a damages analysis for mediation.  Shavitz Decl. ¶ 27.  The parties drafted detailed

position statements for the mediator which outlined each side's legal positions and supporting

facts.  Shavitz Decl. ¶ 27.  Plaintiffs' Counsel researched law addressing the multiple legal issues

to be discussed at mediation including the potential FLSA exemptions, the ways to calculate

damages, and FLSA conditional certification.  Shavitz Decl. ¶ 27.

Prior to mediation, Plaintiffs did not move for FLSA conditional certification or Rule 23

class certification.

On August 4, 2021, the parties had a full-day mediation.  Shavitz Decl. ¶ 28.  The parties

did not reach an agreement at mediation but made significant progress.  Shavitz Decl. ¶ 28.  The

mediator made a mediator's proposal to resolve this action on a collective basis pursuant to 29

U.S.C. §216(b), which both parties accepted on August 6, 2021.  Shavitz Decl. ¶ 28.  The parties

negotiated and finalized a settlement term sheet on the same day.  Shavitz Decl. ¶ 28.

Thereafter, the parties' counsel prepared the long-form settlement agreement and all of

the other settlement documents including this motion for approval, the proposed order, the

proposed Notice Packet, and the declarations.  Shavitz Decl. ¶ 29.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Fund

The Settlement Agreement establishes a settlement fund to settle certain wage and hour

claims against Defendant (the "Gross Fund").  The Gross Fund covers Putative Collective

Members' settlement awards, any Court-approved service awards to Plaintiffs, any Court-

approved attorneys' fees and costs, and the Settlement Administrator's fees and costs.  *Id.* ¶ 30.

The Settlement Agreement also provides that the employer's portion of payroll taxes will be paid

out of the reversion, or, if there is no reversion, out of the Gross Fund.  Defendant shall fund the

settlement within ten days after the Court's Order approving the settlement becomes final and non-appealable.  *Id.* ¶ 30.

## II.  <u>Eligible Employees</u>

Putative Collective Members are all current and former ASMs (about 453 employees) who worked for Defendant in any Gordon Food Service retail store in the United States (except for higher-volume stores MP 130 (Key West, FL), MP 001 (Wyoming, MI), and MP 135 (Ft. Myers, FL) which operate under a different management model), (ii) between October 3, 2017 and March 28, 2021; and (iii) during a time period when their assigned store had two ASMs assigned to that store ("Putative Collective Members").  *Id.* ¶ 31.

Within seven days of the Court's Order approving the settlement becoming final and non-appealable, Defendant will provide the Settlement Administrator with the contact information for all eligible individuals.  *Id.* ¶ 32.  The Settlement Administrator must mail, e-mail, and send via text message the settlement notice to all Putative Collective Members within 30 days of the Court's Order approving the settlement becoming final and non-appealable.  *Id.*  ¶ 32.  The Proposed Notice alerts Putative Collective Members to the settlement's terms, their individual estimated settlement allocation, the release, and the requirement to timely return the Consent to Join Settlement, Claim, and Release Form attached thereto if they wish to be included in the settlement and receive payment.  *See* Ex. A (Proposed Notice Packet).  Putative Collective Members have 60 days to submit their completed Consent to Join Settlement, Claim, and Release Form and may do so by mail (in the pre-paid envelope enclosed with the notice), e-mail, fax, or text message.

### III.    <u>Release</u>

The release is appropriately tailored such that Putative Collective Members who participate in the settlement by submitting a Consent to Join, Claim, and Release Form will release all of their federal, state and local wage and hour claims while employed as ASMs. Shavitz Decl. ¶ 33.  Putative Collective Members who do not timely return a Consent to Join, Claim, and Release Form will not release any claims.  *Id.*  ¶ 33.

### IV.    <u>Allocation Formula</u>

Putative Collective Members who return a Consent to Join, Claim, and Release Form ("Opt-In Plaintiffs") will be paid pursuant to an allocation formula based on the number of weeks they worked during the relevant period.  *Id.*  ¶ 34.  Each Putative Collective Member, including the Plaintiffs, shall be assigned two points for each full week worked as an ASM in a store where two ASMs were assigned between October 3, 2017 and March 28, 2021.  *Id.*  During the same time period, each Putative Collective Member, including the Plaintiffs, shall be assigned one point for each full week worked as an ASM in a store where only one ASM was assigned.  *Id.*  The difference in the point allocation is based upon the parties' agreement that the value of the claims vary depending on how many ASMs were assigned to the stores.  Shavitz Decl. ¶ 34.  The Settlement Administrator will then add all points for all Putative Collective Members together to obtain the "Total Denominator".  The Settlement Administrator will then divide the number of points for each Putative Collective Member by the Denominator to obtain each Putative Collective Member's "Portion of the Net Fund."  *Id.*  ¶ 34.  The Settlement Administrator next will multiply each Putative Collective Member's proportionate share of the Net Fund by the Net Fund to determine each Putative Collective Member's Individual Gross

Settlement Payment.  *Id.* ¶ 34.  The Settlement Administrator will distribute a check to each Opt-In Plaintiff minus applicable employee payroll tax and withholdings.  *Id*.  ¶ 34.

Any unclaimed portion of the Net Fund by Putative Collective Members who do not timely submit a Consent to Join Settlement, Claim, and Release Form or who fail to cash their Settlement Check within 120 days after mailing will revert to Defendant.  *Id*.  ¶ 35.  The Settlement Administrator shall sent a reminder notice via e-mail, text message, and first class mail within 45 days after the initial distribution of checks to those who have not yet cashed their checks to remind them of the deadline to do so.  *Id*.  ¶ 35.

### V.        Service Payment

The Settlement Agreement provides that, with Court approval, seven Plaintiffs will each receive a service payment, in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took to do so.  *Id.* ¶¶ 37-38.  Plaintiffs assisted counsel in the investigation of Plaintiffs' claims and drafting of the complaint and motion papers, responded to discovery requests, produced documents in response to Defendant's document requests, searched their personal and electronic files for responsive documents, and assisted with mediation preparation.  Shavitz Decl. ¶ 37.

### VI.       Settlement Claims Administration

The parties retained AB Data, a wage and hour claims administrator, to serve as the Settlement Administrator at a capped cost of $8,500.00 to be paid from the Gross Fund.  Shavitz Decl. ¶ 36.

### VII.      Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive one-third of the Gross Fund as attorneys' fees as well as reimbursement of actual

reasonable out-of-pocket litigation costs totaling $13,005.42.  *Id.*  ¶¶ 39, 46; Bonnani Decl. ¶ 25. Plaintiffs' Counsel's costs are set forth in the declarations of Gregg Shavitz, Esq. and Megan Bonnani, Esq.  *Id.  Id.*

## **ARGUMENT**

### I.    **The Settlement is Fair and Reasonable and Should Be Approved.**

Courts approve FLSA settlements when they are fair and reasonable and reached as a result of contested litigation to resolve *bona fide* disputes.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Westley v. CCK Pizza Co., LLC*, No. 18 Civ. 13627, 2019 U.S. Dist. LEXIS 188889, at *5 (E.D. Mich. Oct. 31, 2019); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013).  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.[3]  *Lynn's Food*

---

[3]      Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action.  *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent class members for the court to protect.").  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Thompson v. Bruister & Associates, Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013); *Bozak*, 2014 WL 3778211, at *3.  The exacting

*Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, 07 Civ. 430, 2011 WL 2532922, at *2
(S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06 Civ. 299,
2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008).  "Settlement is the preferred means of
resolving litigation."  *Id.*

      This is a fair and reasonable FLSA settlement and Plaintiffs' Counsel and the Named
Plaintiffs fully support this settlement.  Shavitz Decl. at ¶ 13; Bonanni Decl. at ¶ 11.  The
settlement amount is substantial in light of the considerable risks that Plaintiffs faced.  First,
there was a risk that Plaintiffs would not succeed in certifying an FLSA collective action.
Gordon Food would likely argue that the differences among ASMs and stores and other
individualized questions preclude collective certification, or would warrant decertification of a
collective, if certified.  Although Plaintiffs disagree, other defendants have prevailed on such
arguments.  There was also a risk to Plaintiffs because during the statutory period, Defendant
moved from a 2-ASM model in its retail stores to a 1-ASM model and Defendant argued that
such a change rendered class or collective action certification inappropriate. Defendant's stores
were converted to the new model at different dates during the statutory period. *Beckman*, 293
F.R.D. at 480 (citing decertified collective action cases).  Second, Plaintiffs would have had to
defeat Defendant's summary judgment motion to proceed to trial.  Third, a trial on the merits
would involve significant risks for Plaintiffs.  The status of assistant managers under the FLSA is
highly contextual with facts pointing in both directions.  *Gentrup,*2011 WL 2532922, at *3
(finding exemption risks "justify a compromise settlement which provides a settlement payment

---

standards for approval of a class action settlement under Rule 23 do not apply to an FLSA
settlement under the collective action provisions of 29 U.S.C. § 216(b).

to all Plaintiffs").  While Plaintiffs believe that they could ultimately establish Defendant's liability, this would require significant factual development.

Defendant remained firm in its defense as it had taken steps to review the ASMs' classification including receiving an opinion from outside counsel prior to this lawsuit. Defendant argued that this supported its good faith defense and rebutted Plaintiffs' willfulness allegations.  If Defendant prevailed on these arguments, then no liquidated (i.e., double) damages would be awarded and the potential damages period would be limited to two years and not three years.  29 U.S.C. §§ 255, 260.  Notwithstanding, Plaintiffs' Counsel was able to negotiate this settlement which covers a period of three and one-half years (the full FLSA statutory period plus the time covered by the parties' tolling agreement).  Defendant also maintained that conversion of its stores from a 2-ASM model to a 1-ASM model at various dates during the statutory period further strengthened its defenses with respect to decertification and the merits.  Given the many contested legal and factual issues, this settlement reflects a fair compromise and reasonably accounts for the risks of continued litigation.

## II.    The FLSA Settlement Approval Factors All Support Approval

"In making this determination [to approve an FLSA settlement], the court should consider the following factors:  '(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.'"  *Westley*, 2019 U.S. Dist. LEXIS 188889, at *5 (quoting *Brown v. AK Lawncare, Inc*., No. 14 Civ. 14158, 2017 U.S. Dist. LEXIS 71825, at *5 (E.D. Mich. May 11, 2017)).

A.      Factor One:  The Plaintiffs' Range of Possible Recovery

The settlement amount is a reasonable compromise and a very fair settlement for the Plaintiffs and ASMs.  Plaintiffs alleged damages consisted of unpaid overtime, liquidated damages and attorney's fees. The Settlement Agreement provides Plaintiffs with a fair portion of their disputed damages and attorneys' fees and costs.  Plaintiffs' Counsel estimates that the settlement represents approximately 36% of potential damages. Shavitz Decl. at ¶ 13.

As one court noted, the average recovery in class cases is seven (7%) to eleven (11%) percent of claimed damages. *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) (discussing average class results while approving an FLSA settlement of 33% of claimed damages).  In *Dillworth*, the court approved the fairness of the parties' confidential settlement, calling it "exceptional" because it exceeded that average.  Here, the recovery to Plaintiffs, including the Named Plaintiffs and those Putative Collective Members who chose to participate in this settlement, will similarly easily exceed that average pursuant to the Parties' calculations, and, for the reasons articulated in *Dillwort*h, the settlement warrants approval.  The recovery to Plaintiffs here far exceeds the 3% recovery approved by other courts in FLSA cases.  *Andriello v. CFI Sales & Marketing, Inc.*, 2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) (approval of a settlement resulting in a 3% recovery of claimed damages).

The proposed settlement allocation formula is also reasonable.  It reflects the proportion of damages owed to each Putative Collective Member based on the number of potentially eligible overtime weeks he or she worked for Defendant as an ASM during the relevant period, which is a reasonable approximation of each Putative Collective Member's damages, given the evidence gathered in discovery that ASMs tended to work similar hours.  Shavitz Decl. ¶ 34; *Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y.

Dec. 21, 2010) (allocation formula based on each plaintiff's length of service was equitable and reasonable); *Crawford,* 2008 WL 4724499, at *10 (approving allocation plan showing "that the plaintiffs will receive compensation based on the character of their claims and the amount of time they have been employed by the defendant").

> **B.      Factors Two and Three: The Seriousness of the Litigation Risks Faced by the Parties and the Burdens and Expenses Ahead in Litigation Absent Settlement**

By any measure, this is a complex and risky case.  The parties disputed every claim and defense.  The parties argued competing positions as to whether ASMs are eligible for overtime pay.  Shavitz Decl. ¶ 27.  The parties disputed whether the Court would grant Plaintiffs' motion for conditional certification and whether other ASMs would have been eligible to join the case. Shavitz Decl. ¶ 27.  Even if Plaintiffs won their motion for conditional certification, a second period of discovery would have occurred, likely lastinganother eight months.  During that time, Defendant would have likely taken dozens of depositions of ASMs who joined and used such testimony to try to decertify the collective action.  Absent settlement, significant motion practice would have occurred relating to FLSA conditional certification issues, decertification, and summary judgment.  If Plaintiffs defeated Defendant's anticipated motions, the parties would have had to conduct a collective action trial which would have taken a month or more with the losing side likely filing an appeal.

If the parties did not settle, the parties faced the real possibility of at least two to three more years of litigation, discovery, depositions, a trial, and appeals.  Shavitz Decl. at ¶ 51. Plaintiffs estimate that it would likely have cost them about $2,000,000 in attorneys' fees and costs to litigate this matter to conclusion.  Shavitz Decl. at ¶ 51.  The result of the litigation was uncertain and Plaintiffs may not have been able to attain any relief – let alone the relief they are

achieving through this settlement.  While Plaintiffs were confident that they would prevail,

Defendant did possess documentary evidence that Plaintiffs performed managerial work and

Defendant would have argued that the managerial work was their primary duty.  29 C.F.R. §

541.700(a).  If a jury sided with Defendant, then Plaintiffs and other ASMs would receive none

of the benefits from this settlement.

C.    **Factors Four and Five:  Whether the Settlement Agreement Is the Product of Arm's-Length Bargaining Between Experienced Counsel and the Possibility of Fraud or Collusion**

The settlement was the result of vigorously contested litigation with substantial discovery

and arm's-length negotiations with a third-party mediator.  Shavitz Decl. at ¶¶ 21-23.  Defendant

also provided payroll data and information to allow Plaintiffs' Counsel to prepare a damages

analysis for mediation.  *Id.* at ¶ 27.  The parties also shared their mediation position statements

outlining the facts that they believed supported their legal positions and the applicable law

addressing these issues.  *Id.* at ¶ 27.  The parties and their counsel were very well-informed

concerning the facts and legal issues in this case and well-suited to conduct settlement

discussions.  Shavitz Decl. at ¶¶ 21-27.

Plaintiffs' Counsel have significant experience litigating these types of manager

misclassification FLSA collective actions.  Shavitz Decl. at ¶¶ 4-13; Bonanni Decl. at ¶¶ 4-8.

Shavitz Law Group, P.A. has litigated these cases for approximately 20 years and has settled

many similar assistant manager claims against large companies like Gordon Food.  Shavitz Decl.

at ¶¶ 4-13.  Plaintiffs' Counsel's experience allowed us to factor in the risks of continued

litigation and the strength of Gordon Food's defenses.  Shavitz Decl. at ¶ 40; Bonanni Decl. at ¶¶

4-8, 11.  It is Plaintiffs' Counsel's opinion that this settlement is in the best interests of Plaintiffs

and the ASMs as it offers significant money in exchange for a release of their claims.  Shavitz Decl. at ¶ 13; Bonanni Decl. at ¶ 11.

The parties mediated the claims during a full-day session with mediator Hunter Hughes, Esq. and only reached a settlement after both sides accepted the mediator's settlement proposal. Shavitz Decl. at ¶ 28.  Gordon Food's liability was in dispute such that a compromise is appropriate.  Plaintiffs maintain that they were misclassified as exempt and were wrongly denied overtime pay.  Plaintiffs argued that they are owed overtime wages because their primary job duties were non-exempt in nature such as stocking shelves and freezers, processing deliveries, working on the cash register, performing customer service, and cleaning the stores.  ECF No. 1 at ¶ 7.  Defendant countered that argument with evidence that Plaintiffs and other ASMs performed managerial job duties, making them exempt and not eligible for overtime pay.

"The exemption question under the FLSA is a mixed question of law and fact.  The question of how the employees spent their working time is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."  *Hurt v. Commerce Energy, Inc*., 973 F.3d 509 (6th Cir. 2020).  Here, the parties fiercely disputed the facts in the case and whether Plaintiffs' primary duties were non-managerial (making them overtime pay eligible) or managerial (making them not entitled to overtime pay).  Plaintiffs believe such an issue would need to be resolved by a jury. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after private mediation before an experienced mediator.  Shavitz Decl. ¶ 28.  At all times during the settlement negotiation process, negotiations were conducted at arm's-length and properly took into account the risks that both sides faced in this litigation.  *Id.* ¶ 28.  There is no risk of fraud or collusion.

**D.    The Public Interest is Satisfied And Defendant's Request for Confidentiality of the Specific Monetary Amounts in the Settlement Agreement is Appropriate.**

In approving collective action settlements, courts also consider whether the public interest is satisfied.  Here, the public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA — "to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  While Plaintiffs earn well above a substandard wage, the Parties recognize that the exemption status was disputed in this case, and Congressional intent has been achieved where Plaintiffs were able to pursue their claims with competent and experienced counsel.

The public's interest has been satisfied by the Settlement Agreement despite it not being publicly filed.   Where confidentiality is important to the parties, Courts are permitted to evaluate the fairness and reasonableness of the Parties' settlement without requiring the settlement agreement to be publicly filed.  *See, e.g., Lakosky v. Discount Tire Co., In*c., 2015 WL 4617186 (E.D. Mich. July 31, 2015); *Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC*, 2019 WL 2135648, at *1 n.1 (E.D. Mich. May 15, 2019*); Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010); *Pittman v. Matalco (U.S.), Inc*., 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018); *Bradford v. Legacy Health Services*, 2014 WL 7185453 (N.D. Ohio Dec. 16, 2014); *Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio Oct. 22, 2019); *Gentrup,* 2011 WL 2532922.  Confidentiality of the monetary amounts was a material

and well negotiated term of the settlement to Defendant, given unique factors in this case, and Plaintiffs do not object to the confidentiality term.[4]

Defendant's request for *in camera* review and request for a subsequent instruction from the Court to either file the Settlement Agreement under seal or on the public docket with only the specific monetary amounts redacted, would not conceal the existence of a settlement from the public, or even the material terms of the settlement.  Indeed, this Motion is being filed publicly and discloses all significant material terms of the Settlement Agreement, except for the specific payment amounts.  *Athan v. United States Steel Corp.*, 2021 WL 805430 (E.D. Mich. Mar. 3, 2021) (allowing the parties to file the settlement agreement on the public docket with the specific monetary terms redacted where, *inter alia*, the defendant's request for confidentiality was a material term of the settlement and the information set forth in the parties' motion for approval and redacted settlement agreement "will provide the public more than enough background about the resolution of this case to promote the vindication of the rights of future FLSA plaintiffs.").

Further, as the *Pittman* court noted, since there are multiple issues in dispute that are being resolved in the Parties' settlement, the public would "stand to learn little about the value of any given FLSA dispute by viewing the terms of the settlement agreement."  *Pittman*, 2018 WL 6567801, at *2.  The same holds true here where the only terms not being disclosed are the actual

---

[4] While some courts in this district and elsewhere have also refused to review settlement agreements confidentially (*e.g.*, *Smolinski v. Ruben & Michelle Enterprises, Inc.*, 2017 WL 835592 (E.D. Mich. Mar. 3, 2017), Defendant submits that those cases are distinguishable.  In *Smolinski¸* and similar cases, the parties attempted to shield the entire agreement from the public. Here, that is not the case.  The parties are fully disclosing the material terms of this Settlement Agreement in this Motion, including the relative reasonableness of the amounts being paid.  The only terms not being disclosed are the actual dollar amounts of the payments.  Under the circumstances, requiring disclosure of the specific monetary terms would add little.  *Pittman, supra.*

dollar amounts of the payments.  This Motion provides the public sufficient information to evaluate the fairness of the Parties' compromise without seeing the agreement itself.

Defendant is cognizant of the presumption in favor of openness of court records to the public, particularly in the FLSA approval context. *See, e.g., Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). However, public interest also favors settlement. "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016) (quoting *In re Cardizem, CD Antitrust Litig*., 218 F.R.D. 508, 530 (E.D. Mich. 2003) (further quotation marks and citations omitted)).  Here, given unique factual circumstances of this case, the prospect of confidentiality of the specific monetary terms was a key factor in bringing Defendant to the settlement table and a negotiated term important for Defendant's decision to enter into this settlement.

Defendant respectfully requests that the Court review the Settlement Agreement *in camera* and provide further instruction to Defendant regarding whether the Settlement Agreement should be filed under seal or publicly filed with the specific monetary terms redacted.

## III.    The Service Awards to the Named Plaintiffs Should Be Approved as Fair and Reasonable.

Plaintiffs' request for approval of service awards to Named Plaintiffs Patrick Higgins, Ivan Robinson, Brooke Yahle, Joseph Schneider, William Kefauver, Paul Reckley, and Karen Buttery is fair and reasonable.  "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone."  *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *accord Date v. Sony Elec., Inc.*, No. 07 Civ.

15474, 2013 WL 3945981, at *13 (E.D. Mich. July 31, 2013) (awarding service award in common fund case for, *inter alia*, class representative's "responding to discovery and sitting for his deposition") (citation omitted); *Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit").  Named Plaintiffs will also provide a general release of claims in consideration of and in exchange for the service award.  Shavitz Decl. at ¶ 37.

Courts acknowledge that plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1  (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of

claims in the prosecution of civil and wage and hour rights); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.").

Incentive awards are within the discretion of the court.  *See Dallas*, 2013 WL 2197624, at *10; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court." Incentive "awards are particularly appropriate in the employment context.").  In examining the reasonableness of service awards, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation.  *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *Dallas*, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same).  Here, Named Plaintiffs satisfy all three factors.

First, Named Plaintiffs took substantial actions to protect the interests of the Putative Collective Members, and those actions resulted in a substantial benefit to those Putative Collective  Members.  The Named Plaintiffs each participated in a substantial pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, responded to Defendant's discovery requests, and assisted Plaintiffs' Counsel with preparation for mediation. Shavitz Decl. ¶¶ 37-38; *Bert,* 2008 WL 4693747, at *3 (awarding incentive award for assisting

with litigation for benefit of class); = *Frank*, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents). These actions have resulted in substantial benefit to the class. *See, e.g., Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service award of $12,500.00 for named plaintiff out of gross settlement fund of $452,380.00).

Second, Named Plaintiffs undertook substantial direct and indirect risk. Named Plaintiffs agreed to bring the action in their name, and/or to be deposed, and to testify if there was a trial. Shavitz Decl. ¶¶ 37-38. In so doing, they assumed the risk of retaliation and blacklisting. *Frank*, 228 F.R.D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Bozak*, 2014 WL 3778211, at *9 (plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").[5]

---

[5]    *Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] [*sic*] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

Even where there is not a record of actual retaliation or any evidence of the threat of retaliation, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members.  *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Third, Plaintiffs spent a significant amount of time and effort in pursing this litigation on behalf of the Putative Collective Members.  This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, responding to Defendant's document requests and interrogatories, searching for and producing documents and electronic discovery, and helping with mediation preparation.  Shavitz Decl. at ¶ 37; *Bert,* 2008 WL 4693747, at *3.

Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment class and collective actions in this Circuit. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 WL 4693747, at *3 (finding service award of $10,000 to five class representatives was "rather modest" and "fair and reasonable" in employment discrimination case).  In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here.  *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012)

(approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell v. Bovis Lend Lease*, *Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14-15 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving $15,000 and $10,000 to named plaintiffs).

## IV.    Attorneys' Fees and Costs Should be Approved as Fair and Reasonable.

The FLSA provides for reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984). Defendant has agreed that Plaintiffs may request up to one-third of the Gross Fund for their attorneys' fees, as well as Plaintiffs' reasonable out-of-pocket litigation costs of $13,005.42. Shavitz Decl. at ¶¶ 30, 39, 46; Bonanni Decl. at ¶ 25.

### A.  The Court Should Award Attorneys' Fees Based on a Percentage of The Fund

"The purpose of the FLSA attorney's fees provision is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Farmer v. Ottawa Cnty.*, 211 F.3d 1268, 2000 WL 420698, at *7 (6th Cir. 2000)

(citing *United Slate*, 732 F.2d at 502); *see Wilson v. D & N Masonry, Inc.*, No. 12 Civ. 922, 2014 WL 1789136, at *1 (S.D. Ohio May 5, 2014) (same); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("The purpose of allowing an award of attorney's fees under FLSA cases is to encourage employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living."); *see also Bozak*, 2014 WL 3778211, at *6 (S.D.N.Y. Jan. 7, 2010) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (citation omitted).

Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA.  *See Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994); *see Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce [] benefits in order to maintain an incentive to others"); *Bozak*, 2014 WL 3778211, at *6 (collecting cases); *Vazquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA . . . [was] designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.") (citation omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts.  *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573784, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only

nominal damages, are recovered to vindicate employee rights and Congressional policy"); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010).

In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award, which Courts generally determine based upon the percentage-of-fund method.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *In re Packaged Ice Antitrust Litig.*, No. 08 MDL 1952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (stating Sixth Circuit has recognized numerous advantages to percentage of fund method); *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-32 (E.D. Mich. 2003) (finding application of "percentage-of-the-[common-]fund approach appropriate); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ("[I]n common-fund cases, we require only that awards of attorney's fees be reasonable under the circumstances.") (citation and internal quotes omitted).

A percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516-17.  This is an important feature

because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (citation omitted).  The lodestar approach burdens a court with the task of reviewing extensive time records reflecting many hours of attorney time. *Rawlings*, 9 F.3d at 516-17.  In contrast, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys' as to their expected recovery." *Id.* at 516.  Crucially, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement class members who do not file claims revert to Defendant.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) (stating that this approach "rectifies [] inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of 33 percent of the claimed fund and awarding attorneys' fees

of 33 percent of funds made available).

### B. An Award of One-Third of the Common Fund is Reasonable and Should be Granted.

Plaintiffs request an award of one-third of the Gross Fund as attorneys' fees. The central requirement for an award of fees is that it be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); *Rowlings v. Prudential–Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Dillworth*, 2010 WL 776933, at *7 (using reasonableness standard in FLSA context).

The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests, and establishes the reasonableness of their fees. Plaintiffs' Counsel has committed substantial resources to prosecuting this case. The work that Plaintiffs' Counsel has performed including investigating claims, reviewing thousands of pages of documents, drafting the complaint, drafting discovery documents, requests, and responses, preparing a damages analysis, appearing at court conferences, handling multiple discovery conferrals, preparing for and attending mediation, conducting legal research, and negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the collective. *See Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Class Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the class and to representing the class's interests").

Plaintiffs' Counsel have spent more 750.70 attorney, paralegal, and support staff hours prosecuting this case. Shavitz Decl. ¶¶ 41, 44; Decl. of Megan Bonanni ¶ 13. Multiplied by

each attorney's, paralegal's, and staff member's hourly rate, this results in a total lodestar amount of approximately $450,737.50.  Shavitz Decl. ¶ 43.

Plaintiffs' Counsel's request for one third of the fund attorneys' fees will result in a lodestar multiplier of approximately 1.1.  Shavitz Decl. ¶ 49.  However, that multiplier will decrease as Plaintiffs' Counsel will perform additional work on this matter into next year including handling settlement administration issues, communicating with class members regarding the settlement, addressing class members' questions about tax forms for next tax season, and ensuring that all aspects of the settlement administration proceed per the terms of the agreement and Court's Order.  Shavitz Decl. ¶ 45.  This additional work will reduce the multiplier further below 1.1, which is already on the low end of what courts have awarded in class action settlements.  *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *13 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." ); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503–04 (E.D. Mich. 2000) (approving an effective multiplier of 2.21); s*ee also Steiner v. Am. Broad. Co.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D.

31

Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of 7); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

Here, Plaintiffs' Counsel have secured a substantial and certain cash payment as reflected in the Settlement Agreement. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. Shavitz Decl. ¶ 48; Bonanni Decl. ¶ 21; *Dillworth*, 2010 WL 776933, at *8 (citing as justification for one-third recovery from common fund "[t]he contingent nature of the fee agreement," which "meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved"). The requested award is consistent with the norms of class and collective litigation in

this Circuit.  *See, e.g.*, *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (approving attorneys' fees of approximately 33% of the common fund in FLSA case and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (citation omitted); *Ware v. Ckf Enters.,* No. 19 Civ. 183, 2020 U.S. Dist. LEXIS 154995 (E.D. Ky. Aug. 26, 2020) (the court "finds the one-third common fund fees reasonable under the FLSA."); *Satterly v. Airstream, Inc*., No. 19 Civ. 32, 2020 U.S. Dist. LEXIS 210868, at *29 (S.D. Ohio Sept. 25, 2020) ("Here, Class Counsel requests an award of one-third of the settlement fund as a fee award. This is a normal fee amount in common fund settlement in wage and hour cases."; approving $400,000 fee award); *Dillworth,* 2010 WL 776933, at *8 (finding attorneys' fees award of one-third of common fund was "reasonable and has been approved in similar FLSA collective actions in [the Northern District of Ohio]") (collecting cases); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2012 WL 424878, at *12 (E.D. Mich. May 20, 2013) (preliminarily approving attorneys' fees of one-third of the settlement amount).

The fee requested by Plaintiffs' Counsel also is reasonable because they will continue to perform work on behalf of the collective in implementing the settlement, but will not make a supplemental fee application.  Plaintiffs' Counsel anticipate that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from Participating Settlement Class Members about the case and working with the Settlement Administrator.  Shavitz Decl. ¶ 45.  Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

Plaintiffs' Counsel also has incurred $13,005.42 in out-of-pocket costs prosecuting this

case, including filing fees, mediator costs, travel expenses, electronic discovery document management hosting costs, and Court hearing transcript costs.  Shavitz Decl. ¶ 46; Bonanni Decl. ¶ 25; *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "document by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases").

Accordingly, Plaintiffs' Counsel request for attorneys' fees of one-third of the Gross Fund as set forth in the Settlement Agreement and reimbursement of actual costs of $13,005.42 is reasonable and should be approved.

## V.     The Court Should Approve Settlement Notice and Consent to Join, Claim, and Release Form.

The Court should also approve the Proposed Notice and the Consent to Join, Claim, and Release Form, attached hereto.  *See* Ex. A (Notice Packet).  The Proposed Notice sufficiently informs Putative Collective Members of the terms of the settlement, including the allocation formula, the estimated amount to which they are entitled, the opt-in process, the scope of the release, and the request for attorneys' fees and costs.  *Id.*; *Wade,* 2014 WL 2535226, at *1 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup,* 2011 WL 2532922, at *3  (same); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice that provides "notice to the Putative Collective Members of the terms of the Settlement and the options facing the Settlement Class").

## <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court: (1) approve as fair, adequate and reasonable the settlement set forth in the Settlement Agreement;

(2) for purposes of settlement only, certify an FLSA Section 216(b) opt-in class of all current and former ASMs who (i) worked for Defendant in any Gordon Food Service retail store in the United States except for higher-volume stores MP 130 (Key West, FL), MP 001 (Wyoming, MI), and MP 135 (Ft. Myers, FL), which operate under a different management model, (ii) between October 3, 2017 and March 28, 2021; and (iii) during a time period when their assigned store had two ASMs assigned to that store; (3) approve the proposed Notice and Consent to Join, Claim, and Release Form, and direct their distribution; (4) approve service awards to Named Plaintiffs Patrick Higgins, Ivan Robinson, Brooke Yahle, Joseph Schneider, William Kefauver, Paul Reckley, and Karen Buttery as set forth in the Settlement Agreement; (5) approve the request for one-third of the Gross Fund as set forth in the Settlement Agreement, for attorneys' fees, and costs of $13,005.42; and (6) dismiss this case with prejudice and without further costs and fees to any party.  A proposed Order approving the Settlement Agreement is attached hereto as Exhibit B.

Respectfully submitted,

By:/*s/ Megan A. Bonanni*____
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER, BONANNI &RIVERS, P.C.**
117 West 4th Street Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mbonanni@pittlawpc.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz
Tamra Givens
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com

*By: /s/ Margaret Carroll Alli w/consent*____
Margaret Carroll Alli (P38281)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, Michigan 48009
t: (248) 593-6400
f: (248) 283-2925
meg.alli@ogletree.com

Lauren H. Zeldin (GA Bar # 368999)
Jeffrey J. Costolnick (GA Bar # 637168)
Ogletree Deakins Nash Smoak & Stewart, P.C.
191 Peachtree Street NE, Suite 4800
Atlanta, GA 30303
(404) 881-1300

tgivens@shavitzlaw.com

**SHAVITZ LAW GROUP, P.A.**
Michael Palitz
800 3rd Avenue, Suite 2800
New York, NY 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

*Attorneys for Plaintiffs and the Putative Collective*

Dated: September 15, 2021

lauren.zeldin@ogletree.com
jeff.costolnick@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2021, I electronically filed the foregoing with the

United States District Court for the Western District of Michigan, using the Court's ECF system,

which will send notification to all ECF participants.

By:    *s/Megan A. Bonanni*
Megan A. Bonanni
**PITT, MCGEHEE, PALMER, BONANNI & RIVERS, P.C.**
117 West 4th Street Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mbonanni@pittlawpc.com